Argued January 24, affirmed February 5, reconsideration denied
March 13, petition for review denied March 27, 1974

STATE OF OREGON, *Respondent, v.*
JEFFREY E. FITZGERALD (No. 80699),
*Appellant.*

513 P2d 678

*Don S. Dana,* Salem, argued the cause and filed the brief for appellant.

*Scott McAlister,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the

brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant was convicted by a jury of the crime of escape in the second degree, ORS 162.155, and appeals, contending that his motion for acquittal should have been granted because the facts warranted submission to the jury of only a charge of attempt to escape. ORS 162.135 (4) defines escape as "the unlawful departure * * * of a person from custody * * *."

The testimony heard by the jury from the witnesses indicates that defendant with other inmates of the Oregon State Penitentiary had been taken to the county courthouse in Salem for hearings upon various writs they had filed. After the court session, prison guards were escorting them to a vehicle in the courthouse parking lot. As they arrived at the vehicle, defendant and one other prisoner broke and ran. One guard followed each. The guard following defendant testified that defendant did not get more than about 15 or 20 steps ahead of him, that they ran into an adjacent street and into traffic, and that he was no closer than 10 steps behind defendant when a shot was fired upward into the air by a deputy sheriff who was observing the episode. Defendant stopped immediately. The guard returned defendant to the vehicle. He testified that as they returned defendant said, "I can outrun you but I couldn't outrun the bullets." Defendant did not testify or take oath in the case but when the

guard testified to the above quotation the record shows that defendant spontaneously denied it.

The guard said that he never felt otherwise but that he would recapture defendant. The deputy sheriff who fired the shot in the air said he did so more to stop traffic than anything else because of the danger of some vehicle's striking the running individuals. When asked whether he thought "\* \* \* there [was] even a good chance in your opinion, having observed it, that the officer would catch Mr. Fitzgerald," he testified "No." He also testified on cross-examination that there was a possibility the guard would overtake defendant. Both the guard and the deputy sheriff testified that defendant was definitely out of control and custody of the officers.

The thrust of defendant's argument is that inasmuch as he was only some 10 steps ahead of the officer when he stopped it could not be said he was out of the guard's control. In *Raff v. Farm Bureau Ins. Co.*, 181 Neb 444, 447, 149 NW2d 52 (1967), the court quoted with approval from Webster's New International Dictionary 871 (unabridged 2d ed) the definition of escape as " 'To get away \* \* \*; to break away, get free, or get clear \* \* \*.' " There are surprisingly few cases decided under a statute similar to that in Oregon with facts similar to those at bar. However, in *Ford v. State,* 237 Md 266, 268, 205 A2d 809 (1965), the court stated that the prisoner there was taken to court and "he broke away from his guard and ran out of the courtroom, but was recaptured on the street almost immediately and returned" to the court for further proceedings. The court held this was an escape and not just an attempt. *Ford* was cited with approval in a later Maryland case, *Fabian v. State,* 3 Md App 270,

239 A2d 100, 106 (1968), where a defendant was held to have escaped when he got out of a maximum security area in a prison although he remained within the prison walls. We find no Oregon cases where the facts are similar to those at bar.

Under the facts of the case at bar we think there was evidence to submit to a jury whether the defendant was physically and unlawfully out of the guard's custody although only momentarily so. We think the physical definition of escape applies, as it was given by Perkins, Criminal Law 432 (1957):

> "* * * [T]he limits within which a prisoner may be required by law to remain, at a certain time, may be the walls of his cell, the walls of his prison, the boundaries of the prison farm, *the immediate presence of his guard on the street or elsewhere* * * *. Whatever the limits may be for him at the time a departure therefrom is the physical part of an escape." (Emphasis supplied.) (Footnotes omitted.)

Affirmed.